IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVEN MANN, LASHELL EPPERSON,
JUDITH HARRISON, and KEVIN WILLIAMS,

      Plaintiffs,

v.                                                    Civil Action No. 3:20-cv-00820-REP

PHILIP GOMEZ, MICHAEL GOMEZ,
CHRIS MCCLOUD, VIVIAN MCCLOUD,
and JOHN DOES 1-15,

      Defendants.

## SPECIALLY-APPEARING DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR JURISDICTIONAL DISCOVERY

Specially-Appearing Defendants Philip Gomez, Michael Gomez, Chris McCloud, and Vivian McCloud (collectively, the "Tribal Officials") submit their Memorandum in Opposition to Plaintiffs' Motion for Jurisdictional Discovery (ECF Nos. 57, 58).

## INTRODUCTION

Like their Amended Complaint, Plaintiffs' Motion is based on their speculation that the Big Valley Band of Pomo Indians of the Big Valley Rancheria (the "Tribe") is engaged in a purported illegal "rent-a-tribe" scheme. Plaintiffs' speculation has been proven untrue already. In response to a threat of Rule 11 sanctions, Plaintiffs promptly dropped as defendants the non-tribal entities and persons who Plaintiffs contended "rented" the Tribe and funded and controlled its lending entities. Plaintiffs' Motion should be denied because jurisdictional discovery cannot be predicated on their speculation or conclusory assertions regarding the Tribe's lending business. Moreover, none of the discovery Plaintiffs hope to obtain would change the outcome of the Tribal Officials' Motions to Dismiss for Lack of Personal Jurisdiction, Lack of Subject Matter

Jurisdiction, Failure to Join an Indispensable Party, and Failure to State a Claim (ECF Nos. 38–45).

Plaintiffs do not dispute that the Tribe is cloaked with tribal immunity and thus is not subject to suit. While Plaintiffs purport to sue the Tribal Officials in their official and individual capacities, Plaintiffs' vague allegations are directed solely at purported actions that the Tribal Officials took on behalf of the Tribe in their official capacity, as elected officers of the Tribe's Business Committee; namely, voting to enact ordinances creating the tribal lending entities from which Plaintiffs obtained their loans. Therefore, based on Plaintiffs' allegations, the Tribal Officials are immune from suit under both tribal sovereign immunity and legislative immunity, which renders jurisdictional discovery unnecessary and improper.

Rather than focus on the immunity of the Tribal Officials to comport with the allegations in their Amended Complaint, Plaintiffs instead focus in their Motion far beyond the Complaint on the immunity of the Tribe's lending entities. Putting aside the fact that the lending entities are not defendants in this case, Plaintiffs have failed to offer any facts supporting their claim that the Tribe does not own, operate, and control the tribal lending entities. They rely on "evidence regarding other tribal lending enterprises" – not evidence of the Tribe's operations. (*See* ECF No. 58 at 7–9). Plaintiffs' request for discovery on the Tribal Officials' contacts with Virginia is even weaker because Plaintiffs make no allegation that the Tribal Officials have any contacts with Virginia. Plaintiffs should not be allowed to engage in any jurisdictional discovery based on such flimsy assertions, especially considering that forcing the Tribal Officials to engage in discovery is itself an infringement on the Tribe's immunity from suit.

Assuming *arguendo* that jurisdictional discovery is warranted here and it is found that Plaintiffs' have met their burden (and it is not and they have not), the discovery should be limited

to determining whether the Tribal Officials were acting in their official capacity. If the discovery supports Plaintiffs' allegations, *i.e.*, that the Tribal Officials were acting in their official capacity, then the Amended Complaint must be dismissed because claims against the Tribal Officials in their official capacity are claims against the Tribe. Discovery regarding the operations of the Tribe's lending entities would only be warranted if the Tribal Officials were acting as agents of the entities (which Plaintiffs do not allege), and even then, the Fourth Circuit's decision in *Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019), requires that the scope of that discovery must be much more limited than that suggested by Plaintiffs.

## **LEGAL STANDARD**

It is Plaintiffs' burden, "as the party seeking discovery, to demonstrate [their] entitlement to jurisdictional discovery and the resulting prejudice from its denial." *See Finn v. Great Plains Lending, LLC*, 689 F. App'x 608, 610 (10th Cir. 2017) (citing *Breakthrough Mgmt. Grp.*, 629 F.3d 1173, 1189-90 & n.11 (10th Cir. 2010)). A district court should deny jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions" in support of jurisdiction. *Gibbs v. Plain Green, LLC*, No. 3:17CV495, 2018 WL 3614969, at *7 (E.D. Va. July 27, 2018) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)); *see also Base Metal Trading, Ltd v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (finding the district court did not abuse its discretion in denying jurisdictional discovery where "the plaintiff simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F.Supp.2d 545, 554 (E.D. Va. 2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only 'bare allegations' to dispute defendant's affidavits denying jurisdictional acts or contacts.").

**ARGUMENT**

I.  **The discovery sought by Plaintiffs is an infringement on tribal sovereign immunity.**

The Tribal Officials' Motions to Dismiss (ECF Nos. 38-40, 43-45) show they are entitled to tribal sovereign immunity barring Plaintiffs' claims. There is no dispute that the Tribe is entitled to sovereign immunity, and that immunity is extended to tribal officials acting in their official capacity – as is the case here. Without jurisdictional allegations that the Tribal Officials acted outside of their official capacities, as detailed below, Plaintiffs are unable to demonstrate they are entitled to jurisdictional discovery. Plaintiff's attempt to analogize jurisdictional discovery allowed in cases where the defendants at issue were lending entities – not the Tribe nor Tribal Officials – carries no weight and improperly attempts to frame the issues.

Subjecting an Indian tribe or its Tribal Officials to jurisdictional discovery has grave consequences, as being subjected to discovery erodes their tribal sovereignty. "[T]ribal sovereign immunity 'is an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. Vaughn,* 509 F.3d 1085, 1090 (9th Cir. 2007)). This is because "[t]ribal sovereign immunity would be rendered meaningless if a suit against a tribe asserting its immunity were allowed to proceed to trial." *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1050 (11th Cir.1995); *Bowen v. Doyle*, 880 F. Supp. 99, 134 (W.D.N.Y. 1995) ("A claim of sovereign immunity is forever lost by subjecting [the party] to the very process from which he asserts he is immune."). Indeed, immunity doctrines are meant to give sovereigns "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *In re Facebook Inc.*, 42 F. Supp. 3d 556 (S.D.N.Y. 2014) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)).

Whether or not jurisdictional discovery should be permitted is a critical issue as "infringement of tribal sovereign immunity constitutes irreparable harm by invading tribal self-government in a way that 'cannot be adequately compensated for in the form of monetary

damages' and because the loss of tribal sovereignty may not be subject to remedy upon final determination on the merits." *United States. v. Washington*, 20 F. Supp. 3d 986, 1073 (W.D. Wash. 2013) (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250–51 (10th Cir. 2001)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (noting that threshold immunity questions should be resolved "before permitting discovery"). And as "[t]ribal sovereign immunity derives from the same common law immunity principles that shape state and federal sovereign immunity," these principles apply here. *Maxwell v. Cnty. of San Diego,* 708 F.3d 1075, 1087–88 (9th Cir. 2013). Moreover, jurisdictional discovery that targets government officials is "peculiarly disruptive to effective government." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982); *see also Williamson v. U.S. Department of Agriculture*, 815 F.2d 368, 383 (5th Cir. 1987) (noting the "harassment and the substantial distractions" that government officials must endure when subjected to the discovery process).

Thus, as the Tribe is a federally-recognized Indian tribe, and the Tribal Officials are acting solely in their representative capacities, there is no jurisdiction, and the Plaintiffs' claims are barred. Plaintiffs have also failed to adequately allege sovereign immunity was either abrogated or waived. Plaintiffs' speculation, which is supported only by a claims of what discovery "could show" or "may show", does not satisfy the high burden required to force the Tribe to engage in jurisdictional discovery.

## II. Plaintiffs have failed to satisfy their burden to show jurisdictional discovery is necessary.

With that weighty context in mind, Plaintiffs bear the burden to show jurisdictional discovery is warranted, and they have failed to meet that burden. Yet, they offer only speculation, assumptions, and conclusory statements that the lending entities (not named as defendants) are

part of an illegitimate "rent-a-tribe" operation rather than arms of the Tribe. They further offer only speculation and conclusory statements that the Tribal Officials were not acting in their official capacity within the scope of authority granted by the Tribe – despite the fact that the only allegations directed against the Tribal Officials describe their activities as legislators, necessarily protected by legislative immunity. Because this is insufficient to establish their entitlement to jurisdictional discovery, the Court should deny Plaintiffs' motion.

The essential thrust of the only allegations directed towards the Tribal Officials – totaling eight paragraphs – is that the Tribal Officials enacted (or had the ability to enact) legislation in connection with the Tribe's lending entities, were charged with overseeing the management of the lending entities, and those businesses caused the Plaintiff's alleged harm. Am. Compl. ¶¶ 57, 66, 76, 83, 101-104. These are clearly legislative acts. Hence, they cannot form the basis for suit against the Tribal Officials, who are entitled to legislative immunity. *Terry v. Bobb*, 827 F. Supp. 366, 367 (E.D. Va. 1993) ("It is clear that local legislators enjoy absolute immunity from suit for decisions made in their capacity as legislators.") "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity'" which "typically involve[s] the adoption of prospective, legislative-type rules, rules that establish a general policy affecting the larger population," and budgetary decisions. *Bogan v. Scott Harris*, 523 U.S. 44, 54 (1998) (citing *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *E.E.O.C. v. Washington Suburban Sanitary Com'n*, 631 F.3d 174, 184 (4th Cir. 2011); *Cooper v. Lee County Bd. of Supervisors*, 966 F. Supp. 411, 414 (W.D. Va. 1997); *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988); *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995). Legislative immunity extends to tribal governments. *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985) ("[I]ndividual members of the Tribal Council . . . enjoy absolute legislative immunity . . . for official actions taken when acting in a

legislative capacity."); *Grand Canyon Skywalk Dev., LLC v. Hualapai Indian Tribe of Ariz.*, 966 F. Supp. 2d 876, 885-86 (D. Ariz. 2013) ("[T]o the extent the complaint names Tribal Council members for their role in passing the takings ordinance and resolution, they have legislative immunity."); *See Bogan*, 523 U.S. at 47; *Mainstream Loudoun v. Bd. of Trustees of Loudoun Cty. Library*, 2 F. Supp. 2d 783, 788 (E.D. Va. 1998).

The allegations relating to the Tribal Officials' legislative activities do not provide jurisdiction and do not implicate the Tribal Officials in their individual capacities. There are *no other allegations against the Tribal Officials*. As a result, while the Plaintiff's purport to sue the Tribal Officials in their individual capacities, allegations supporting such a claim cannot be found in the Amended Complaint, which shows that jurisdictional discovery here would not be anything other than a fishing expedition. "The day is past when our notice pleading practice – circumscribed only by a requirement of subjective good faith on the pleader's part – plus liberal discovery rules invited the federal practitioner to file suit first and find out later whether he had a case or not." *Hale v. Harney*, 786 F.2d 688, 692 (5th Cir. 1986). Plaintiffs have not alleged a case against the Tribal Officials in their individual capacities and should not be permitted discovery to backfill what their Complaint lacks.

Courts routinely deny jurisdictional discovery where a plaintiff merely asserts that a tribal official or entity is not entitled to sovereign immunity without proffering specific facts in support of the assertion. In *Everette v. Mitchem*, 146 F. Supp. 3d 720 (D. Md. 2015), for instance, relying on Fourth Circuit precedent, the court denied jurisdictional discovery to a plaintiff who "failed to identify any specific facts to support her assertion that tribes do not own, operate, and control [the tribal lending entities]." *Id.* at 722 (citing *Carefirst of Md., Inc.*, 334 F.3d at 402). The court recognized that "permitting jurisdictional discovery would undermine the purposes of the

7

sovereign immunity doctrine." *Id.* at 723; *see also Simmons v. Corizon Health*, 122 F. Supp. 3d 255, 272 (M.D.N.C. 2015) (finding discovery would "deprive the [Tribe] of the very immunity to which it is entitled"); *Bonnet v. Harvest (U.S.) Holdings*, 741 F.3d 1155, 1160 (10th Cir. 2014) (holding immunity exists to shield tribes from the burdens of discovery). Similarly, in *White v. University of California*, 765 F.3d 1010, 1025 (9th Cir. 2014), the Ninth Circuit affirmed the denial of jurisdictional discovery where the plaintiff offered "only speculative arguments" that an entity was not an arm of the tribe entitled to sovereign immunity.[1]

Like the plaintiffs in *Everette* and *White*, Plaintiffs offer only speculation, assumptions, and conclusory statements to support their sovereign immunity challenge. Regarding the Tribal Officials, Plaintiffs assert in conclusory fashion that they may be liable for damages in their individual capacity but offer no allegations of actions taken outside of their official capacities. Plaintiffs claim that they are not required to plead individual capacity conduct because this would improperly "shift the burden of proof on Plaintiffs." (Mot. at 16.) This is incorrect; where the totality Plaintiffs' allegations relate only to *official capacity* conduct (even though Plaintiffs also state they are suing the Tribal Officials in their individual capacities without any supporting allegations), the Tribal Officials and the Court are entitled to rely on Plaintiffs' allegations. *Davis v. Town of Southern Pines*, 449 S.E.2d 240, 246 (N.C. Ct. App. 1994) ("[I]f a plaintiff 'fails to

---

[1] By contrast, courts granting jurisdictional discovery have explicitly founded that decision on the plaintiff's offering of specific facts to substantiate allegations of a lack of sovereign immunity. In *Gibbs v. Plain Green, LLC*, for example, the court granted discovery because "Plaintiffs state[d] specific and substantive allegations challenging" the lending entities' sovereign immunity and cited to specific documents and exhibits "to substantiate their allegations" that the tribes received only a fraction of the entities' revenue, that the lending entities did not provide jobs for tribal members, and that the tribes did not control the lending entities' day-to-day operations. 331 F. Supp. 3d at 529–30. Limited jurisdictional discovery was only warranted because the "allegations and supporting evidence raise legitimate questions about Defendants' claim to sovereign immunity, *going beyond mere speculation or conclusory statements*." *Id.* at 530 (emphasis added). In *Finn v. Great Plains Lending, LLC*, the Tenth Circuit held jurisdictional discovery was appropriate where plaintiff's allegations were "specific and plausible" and supported by evidence such as website screenshots showing the lending entity was a product of a non-tribal company. 689 F. App'x at 610.

advance any allegations in his or her complaint other than those relating to a defendant's official duties, the complaint does not state a claim against a defendant in his or her individual capacity."); *see also House of Blues Concerts, Inc.*, 2006 WL 1321125, at *3–5 (denying jurisdictional discovery on whether tribal official defendant acted in an individual capacity because the Complaint alleged conduct within the scope of his employment).[2]

The scant allegations aimed at the Tribal Officials in the Amended Complaint assert only that the Business Committee enacted ordinances to establish and create the lending entities (Am. Compl. ¶¶ 57, 66, 76, 83); the Business Committee has the power to shut down the entities (*id.* at ¶ 101); the Tribal Officials were instrumental in creating the lending entities and "agreed to the collection" of the loans at issue (*id.* at ¶ 102); and the Tribal Officials have signed ordinances, participated in decisions, attended meetings, and voted in favor of the lending entities' practices (*id.* at ¶¶ 103-04). All those allegations relate to actions taken in the Tribal Officials' official capacity. Plaintiffs' Motion also relies on the assertion that the Tribal Officials are tasked with "oversight" of the lending entities' management but fails to explain how such oversight falls outside of their official duties. (Mot. at 2.) All of these are quintessential "official" acts.

Plaintiffs' hypothesis that further discovery "could show" or "may show" that the Tribal Officials acted outside of their official capacity (Mot. at 17) is insufficient to justify jurisdictional discovery without proffering specific facts in support. Plaintiffs' reliance on *Kerns v. United States*, 585 F.3d 187, 195 (4th Cir. 2009), to support their argument that discovery should be allowed where it "could show" facts relevant to whether the defendants were acting in an official or individual capacity, is misplaced. First, *Kerns* did not involve a defendant invoking immunity

---

[2] Plaintiffs erroneously suggest that the Tribal Officials have the burden of proving that they are immune and thus must provide evidence to support their position. Because Plaintiffs have pled that the Tribal Officials are acting in their official capacity, the Tribal Officials do not need to put forth any evidence to show that they are immune from suit.

from suit, and thus the serious concern of undermining the purpose of sovereign immunity by allowing invasive discovery without a sufficient basis was not at play. *See Everette*, 146 F. Supp. 3d at 723. Second, the parties in *Kerns* disputed whether the defendant was acting within the scope of her employment, *Kerns*, 585 F.3d at 188, 190–91, whereas Plaintiffs here have only alleged actions that clearly fall within the Tribal Officials' official capacities.

Plaintiffs also fail to offer anything other than assumptions and speculation to support their assertion that the lending entities are not arms of the Tribe. As an initial matter, the lending entities have not been named as defendants in this case. Contrary to Plaintiffs' assertions, the Tribal Officials derive their sovereign immunity from their positions as *officials of the Tribe*, not from their relationship to the lending entities, and thus the status of each entity as an arm of the Tribe is not relevant to the Tribal Officials' immunity. *See infra* Part III.

Even if the lending entities' immunity was relevant, Plaintiffs have cited no facts to support their assertion that the entities are not arms of the Tribe other than pointing to certain irrelevant provisions of the entities' loan agreements, which "mirror the provision[s] used in the contracts provided by Big Picture Loans," one of the defendant lending entities in *Williams*. (Mot. at 9-10.) Of course, in *Williams*, the Fourth Circuit ruled that the lending entities were arms of the tribe and thus *immune from suit*. In any event, in doing so, the Fourth Circuit did not mention the contractual provisions cited by Plaintiffs, which shows that the similar contractual provisions do not bear on the lending entities' immunity and thus do not support Plaintiffs' request for jurisdictional discovery.

Plaintiffs also surmise that the Tribe's association with four lending entities "*suggests* that the Tribe has affiliated with multiple different third parties," and they "*believe* that Defendants ultimately allow non-tribal participants to the lending businesses," but offer no basis for these

assertions beyond pure speculation. (*Id.*) Unlike the plaintiffs in *Gibbs* and *Finn*, they offer no specific, substantive facts regarding the creation, purpose, control, or financial relationship between the lending entities and the Tribe sufficient to create a "legitimate question" regarding their arm-of-the-tribe status. *Gibbs*, 331 F. Supp. 3d at 529–30. Instead, Plaintiffs spend most of their Amended Complaint and Motion for Jurisdictional Discovery discussing *other* cases, involving different tribes, and *other* lending entities irrelevant to the specific facts, issues, and defenses involved in this case.

In short, Plaintiffs' request for jurisdictional discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of jurisdictional discovery). This is insufficient to justify undermining the Tribe's sovereign immunity by authorizing Plaintiffs' overt fishing expedition. *Id.* Accordingly, the Court should deny Plaintiffs' motion.

### III. Plaintiffs have no basis to seek discovery related to the lending entities.

Even if Plaintiffs could make a sufficient showing to justify jurisdictional discovery (which they have not done), they would have no entitlement to discovery regarding the *operations* of the Tribe's lending entities, which are not defendants in this case. The Tribal Officials derive their immunity from their positions as officers of the *Tribe*, not from their relationship to the lending entities. Therefore, the only discovery relevant to the Tribal Officials' immunity is discovery related to whether they were acting in their official capacity and within the scope of the authority granted to them by the Tribe.

Plaintiffs incorrectly claim that extensive discovery related to the operations and structure of the Tribe's lending entities is warranted simply because "[i]f these entities are not entitled to sovereign immunity, it naturally flows that acts performed on their behalf by Defendants would

also not be entitled to sovereign immunity." (Mot. at 13.) That completely misconstrues the nature of the sovereign immunity to which the Tribal Officials are entitled. They are not immune because their acts were performed *on behalf of the entities*: they are immune because, as alleged by Plaintiffs, they were acting in their official capacities within the scope of their authority as officials of the *Tribe*. (*See* ECF No. 45 at 13–14). Indian tribes enjoy immunity from suit and that "individual tribal officers acting within their representative capacity within the scope of their authority are also shielded by sovereign immunity." *Thomas v. Dugan*, 168 F.3d 483, 483 (4th Cir. 1998) (citing *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479–80 (9th Cir. 1985)). Thus, the only relevant question underlying the Tribal Officials' sovereign immunity claim is whether they were acting in an official capacity within the scope of their authority.

Discovery related to the immunity of the Tribe's lending entities would only be relevant if the Tribal Officials were acting in their individual capacities as agents of the entities. But while Plaintiffs have superficially alleged they are suing the Tribal Officials in their individual capacities, Plaintiffs have alleged only conduct that falls squarely within the Tribal Officials' official capacities in their roles as members of the Tribe's Business Committee. Because Plaintiffs "fail[] to advance any allegations in [their] complaint other than those relating to [the Tribal Officials'] official duties," they have failed to state a claim against the Tribal Officials in their individual capacities. *Davis*, 449 S.E.2d at 246.[3]

In short, Plaintiffs have no basis to seek discovery related to the operations of the entities. To the extent Plaintiff is attempting to develop causes of action against lending entities not present in this case, Plaintiffs' requested discovery puts the cart before the horse and would impose an

---

[3] Plaintiffs have not alleged factual jurisdictional allegations that the Tribal Officials were operating outside of their representative capacities. *See* Dkt. 45 at 3-4; *supra* Part III. Though Plaintiffs claim this is "inaccurate", they decline to identify in their Motion the factual allegations demonstrating the Tribal Officials were operating in their individual capacities. Dkt. 58 at 16.

onerous, unjustified infringement on tribal sovereignty without proper basis. If jurisdictional discovery is warranted at all, it should be limited to whether the Tribal Officials were acting in an official capacity.

**IV.     If jurisdictional discovery is permitted, it should be sharply limited.**

If, despite the arguments above, the Court is inclined to allow discovery, it "'should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination,' and a discovery order should be 'narrowly tailored . . . to the precise jurisdictional fact question presented.'" *Finn v. Great Plains Lending, LLC*, 689 F. App'x 608, 611 (10th Cir. 2017) (quoting *Hansen v. PT Bank Negara Indonesia (Persero), TBK*, 601 F.3d 1059, 1064 (10th Cir. 2010)).

Because resolution of whether the Tribal Officials were acting in their official capacity is dispositive of their immunity claim, any ordered discovery should be limited <u>solely</u> to that discrete issue and tailored tightly to factual non-conclusory allegations in the Amended Complaint. The broad arm of the tribe discovery requested is unnecessary based on the allegations levied against the Tribal Officials. As stated above, the only factual allegations directed towards the Tribal Officials deal with their activities as legislators, and those activities are necessarily afforded legislative immunity. As the requested information would not inform the Court's resolution of whether the Tribal Officials were acting in their official capacities during the allegations unrelated to their activity as legislators, the discovery is not relevant and should not be permitted. Any ordered discovery must be narrow and tethered tightly to factual allegations ostensibly abrogating

13

immunity for reasons other than the Tribal Officials' legislative activity.[4] Any broader discovery would be in error.

## V. Plaintiffs have not alleged facts sufficient to impose personal jurisdiction discovery.

Plaintiffs bear the burden of proof for the exercise of personal jurisdiction over a non-resident defendant, and they must allege sufficient facts within the complaint to make out a *prima facie* showing of jurisdiction. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989); *see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("When . . . a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction."); *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).

Plaintiffs utterly fail to make that showing. Plaintiffs do not allege or identify conduct by the Tribal Officials that took place in or was directed at Virginia. Of the eight paragraphs in the Amended Complaint directed towards the Tribal Officials, there are no specific factual allegations identifying conduct taking place outside of sovereign Tribal Land. Am. Compl. ¶¶ 57, 66, 76, 83, 101-104). Plaintiffs do not allege, nor can they, that any Tribal Official does any of the following in Virginia: maintain an office, have a place of business, register to do business, have a bank account, have a telephone number, rent a post-office box, own real property, own personal property, or employee people.

In sum, Plaintiffs do not and cannot establish sufficient minimum contacts between each of the Tribal Officials and Virginia. Haling the sovereign Tribal Official defendants into a far-

---

[4] Moreover, Plaintiffs push for broad discovery based on *Miami Nation*'s extension of the *Breakthrough* factors and ignore the far more limited, and binding, approach used by the Fourth Circuit in *Williams* to set the parameters of appropriate discovery.

14

flung forum state offends traditional notions of fair play and substantial justice as the Tribal Officials have no connection to Virginia, directed no activity to Virginia, and did not submit, nor purposefully avail themselves, to the jurisdiction of this Court. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (declining to find personal jurisdiction, "'[b]ecause a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just' . . . Such substantial contacts are absent here."); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 (4th Cir. 2009) ("[C]ontacts with the forum state were sufficiently attenuated that it would be a manifest injustice to hale it into Virginia court. The district court did not err in concluding that it lacked specific personal jurisdiction over Structure Works.") There is, therefore, no basis to permit jurisdictional discovery on this record. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) ("[W]here, as here, the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction, we see no reason to overturn the district court's exercise of discretion."); *Carroll v. Vinnell Arabia, LLC*, No. 1:15-cv-815, 2015 U.S. Dist. LEXIS 127207, 2015 WL 5579917, at *21-22 (E.D. Va. Sept. 22, 2015) ("None of the information sought [in personal jurisdictional discovery] would change the undisputed facts already before the Court. . . [a]ccordingly, the Court denies the request for a limited discovery period.").

## **CONCLUSION**

For the reasons stated herein, Defendants, Philip Gomez, Michael Gomez, Chris McCloud and Vivian McCloud, by counsel, hereby request that the Court enter an Order: (1) declining to allow jurisdictional discovery; (2) in the alternative, limiting any jurisdictional discovery to the

dispositive issue of whether the Tribal Officials were acting in their official capacities; and (3) awarding the Tribal Officials any other relief justice requires.

**PHILIP GOMEZ, MICHAEL GOMEZ, CHRIS MCCLOUD AND VIVIAN MCCLOUD**

By: */s/David N. Anthony*
David N. Anthony
Virginia State Bar No. 31696
*Counsel for Defendants, Philip Gomez, Michael Gomez, Chris McCloud and Vivian McCloud*
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email: david.anthony@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of June 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to all counsel of record.

        */s/ David N. Anthony*
        David N. Anthony
        Virginia State Bar No. 31696
        *Counsel for Defendants, Philip Gomez, Michael Gomez, Chris McCloud and Vivian McCloud*
        TROUTMAN PEPPER HAMILTON SANDERS LLP
        1001 Haxall Point
        Richmond, VA 23219
        Telephone: (804) 697-5410
        Facsimile: (804) 698-5118
        Email: david.anthony@troutman.com