IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVEN MANN, et al.,

    Plaintiffs,

v.                              Civil Action No. 3:20-cv-820

MICHAEL GOMEZ, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(1-3) (ECF No. 15) ("the Motion"). The Motion is the lone pending matter in the case, with all other claims and issues having been resolved by settlement. For the reasons set forth below, the Motion will be denied.

The Motion asks the Court to impose sanctions on the plaintiffs' attorneys for the following filings:

(1) The plaintiffs' dismissal notice, ECF No. 13, which the defendants argue contains sanctionable advocacy of a disproven claim ("the dismissal notice"); and

(2) A filing in a separate case pending before this Court (Williams v. MicroBilt Corp., 3:19cv85), which attaches as an exhibit the COMPLAINT in this case in support of claims about Philip Burgess, who is a defendant in that case and one of the dismissed defendants in this case ("the Williams filing").

The defendants argue that both of those filings violate Rule 11 because they constitute "later advocating" of claims about the defendants that have been refuted.

Case law, the text of Rule 11, and the Rule's Advisory Committee notes uniformly indicate that the filings for which the defendants ask the Court to apply sanctions are not the kind of filings that are sanctionable under Rule 11. Accordingly, it is not necessary to decide whether the plaintiffs had a sufficient basis for the allegations they made in their CLASS ACTION COMPLAINT (ECF No. 1) ("the COMPLAINT"), and the Court will therefore deny the Motion.

## BACKGROUND

The COMPLAINT alleges a RICO conspiracy in which one subset of the defendants provided funding to the second subset of the defendants, affiliated with the Big Valley Band of Pomo Indians, so that the second subset could provide consumer loans at rates that exceed Virginia's state usury laws while remaining immune from recourse (due to tribal sovereign immunity) as part of a so-called rent-a-tribe scheme. ECF No. 1, ¶5. The COMPLAINT named the following defendants:

    (1) Princeton Alternative Funding, LLC; Princeton Alternative Income Fund, L.P.; Philip Burgess; Alonzo Primus; Walter Wojciewchowski; MicroBilt Financial Services Corp.; and LJP Consulting, LLC ("the non-tribal defendants"); and

2

    (2)  Philip Gomez, Michael Gomez, Chris McCloud, Vivian
       McCloud, and John Does 1-15 ("the tribal defendants")

The COMPLAINT was filed on October 21, 2020. On November 11, 2020,
the defendants' attorneys sent plaintiffs' counsel a safe harbor
letter, which warned that the COMPLAINT's allegations about the
non-tribal defendants were unfounded and that failure to retract
them would result in the defendants' moving for sanctions. See
Fed. R. Civ. P. 11(b) (requiring that filings be "warranted by
existing law" and that "the factual contentions have evidentiary
support"). The safe harbor letter also took issue with the fact
that plaintiffs' counsel, who are also counsel for the plaintiffs
in Williams v. MicroBilt, had attached the COMPLAINT in this case
to a filing in the Williams case. The COMPLAINT was used in
Williams to illustrate the plaintiffs' claim that Philip Burgess
(a defendant in both cases) has voluminous business dealings in
Virginia and is therefore amenable to specific personal
jurisdiction in Virginia for purposes of the Williams litigation.
The defendants' safe harbor letter requested that:

> in addition to withdrawing the Class Complaint, [plaintiffs'
> counsel] further notify [the Court] that the purpose for which
> [plaintiffs' counsel] utilized the Class Complaint [in
> Williams] is no longer valid and that the Court should not
> consider the Class Complaint for the jurisdictional purposes
> for which it was attached as an exhibit.

ECF No. 19-4 at 3.

    In response to the defendants' letter, the plaintiffs'
attorneys submitted a notice of voluntary dismissal, ECF No. 13,

in which they dismissed the non-tribal defendants from this case. They retained their claims against the tribal defendants in their amended CLASS ACTION COMPLAINT. ECF No. 14. The dismissal notice was filed on December 1, 2020--20 days after the plaintiffs' counsel had been sent the safe harbor letter and thus within the time allowed by Rule 11's safe harbor provision.

The dismissal notice withdrew the allegations in the COMPLAINT that the defendants had alleged to be sanctionable. But the dismissal notice also included the following statement:

> Although Plaintiffs believe there is a reasonable basis to allege that Defendants are part of a single conspiracy, Plaintiffs are dismissing this case until more information is obtained from the tribal officials regarding the operations of their businesses.

ECF No. 13 at 1-2. Appended to that sentence was the following footnote:

> Defendant Burgess has sued on a personal basis the attorneys representing the consumers in this matter and others, including a recent attempt to amend a complaint in a pending action with respect to counsel's representation in this case. While it is possible that the present action could have preceded against him as is, that distraction can await a later day.

Id. at 2. The plaintiffs' attorneys took no action in Williams with respect to what had been requested in the safe harbor letter.

On December 8, 2020, a week after the plaintiffs' notice of dismissal of the claims against the non-tribal defendants, the defendants filed the motion for sanctions, claiming both the

4

dismissal notice and the plaintiffs' attorneys' inaction in
Williams to be sanctionable under Rule 11.

DEFENDANTS' ARGUMENT

**a.   The Dismissal Notice**

The defendants argue that the language in the dismissal notice
constitutes "repeating . . . the very same baseless allegations
made in the class complaint." ECF No. 16 at 18.  The defendants
make clear that what they call a "parting shot" in the dismissal
notice is the core of their sanctions claim.

The defendants' argument relies on the premise that the
statement that the plaintiffs' attorneys still believe there to
have been a "reasonable basis" for the original filing amounts to
advocacy of those claims.  They rely also on the claim that the
footnote regarding Burgess amounts to something like "working the
ref," because the presiding judge in this case is also the
presiding judge in Williams v. MicroBilt Corp., a case which until
now has largely revolved around the issue of whether Burgess is
amenable to specific personal jurisdiction in Virginia.

Because the plaintiffs' comments in the dismissal notice are
said to be "wholly unnecessary in a Rule 41(a) dismissal," the
defendants argue that they amount to a "renew[al] [of] RICO
conspiracy allegations" against the non-tribal defendants,
including Burgess.  ECF No. 16 at 20.  In their reply brief, the
defendants further characterize the dismissal filing as "exactly

5

the 'reaffirmation' and 'continued advocacy' that Rule 11 is designed to prevent." ECF No. 26 at 9.

In other words, the defendants' argument respecting the dismissal filing relates to their view of the plaintiffs' attorneys' purpose in filing the COMPLAINT in the first place. As the defendants construe this case, it was, from the beginning, subservient to the end of aiding the plaintiffs' case in Williams. The defendants repeatedly allege that the plaintiffs' attorneys' primary purpose in launching this litigation was to make more plausible to the Court the view that Burgess was amenable to personal jurisdiction in Virginia.    That, according to the defendants, was the actual explanation for the plaintiffs' attorneys' "parting shot" in the dismissal filing:  to influence the Court in its perceptions of Burgess, even after admitting a lack of confirming information.

### b.    The Williams Filing

The defendants also argue that the plaintiffs' attorneys should be sanctioned for "failure to withdraw the Class Complaint as an exhibit in [Williams v. MicroBilt Corp., 3:19cv85], even though Defendants' counsel specifically requested that they do so in the Safe Harbor Letter." ECF No. 16 at 22.

The Williams case has, for altogether too long, been occupied with the issue of whether Philip Burgess is amenable to specific personal jurisdiction in Virginia.  That question hinges on whether

6

Burgess has sufficient "minimum contacts" with Virginia. After a prolonged dispute over discovery, the parties in that case filed statements of position on their views of the status of the jurisdictional issue. The plaintiffs, in their statement, argued that there was ample evidence that Burgess satisfied the minimum contacts requirement for jurisdiction. To buttress this claim, they referred to the COMPLAINT in this case:

Burgess is not only in control of MicroBilt, but rather, of multiple companies targeting Virginia consumers. By way of another example, Plaintiffs attach hereto a complaint filed against Burgess for his role in a payday lending scheme doing business in Virginia. Ex. 2. Contrary to his declaration—claiming no business relationships with Virginia whatsoever—Burgess is a directing participant and lead conspirator in this scheme, likely involving thousands of illegal loans to Virginia consumers. Burgess, of course, wants to hide these types of business dealings from this Court as they will show the second prong of Va. Code § 8.01-328.1(A)(4) is easily satisfied.

3:19cv85, ECF No. 170 at 4-5. The defendants' safe harbor letter and subsequent filings have treated the plaintiffs' failure to notify the Williams court that the claims are withdrawn and should not be considered as itself a sanctionable act encompassed by the original safe harbor letter. They put this claim most clearly in their reply brief:

Plaintiffs' counsel, by failing to simultaneously withdraw the [COMPLAINT] from consideration in Williams, similarly continued to advocate the use of the False Contentions--and even exaggerate them against Mr. Burgess--contained in the [COMPLAINT] in a litigation filing - which is an additional Rule 11 violation.

7

ECF No. 26 at 8. The defendants' argument, in other words, is that the submission of the Williams filing, and subsequent failure to withdraw that filing, is tantamount to continued advocacy of the relevant claims made in the filing, including the claim that the contents of the COMPLAINT in this case meet Rule 11's requirements.

**APPLICABLE LEGAL STANDARD**

The text of Rule 11 reads:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or <u>later advocating it</u>—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2)   the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4)   the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b) (emphasis added).

Courts have repeatedly made clear that Rule 11 is directed at conserving judicial resources by reducing frivolous and

unmeritorious filings that would distract a Court from more substantive and important work. Courts thus analyze Rule 11 issues with an eye toward whether the pleading lacks a non-frivolous legal or factual basis and whether it is predicated on an improper purpose, thus abusing or wasting judicial resources. See, e.g., Moody v. Arc of Howard Cnty., Inc., 474 F. App'x 947, 950 (4th Cir. 2012) ("The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation."); Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002) ("[Rule 11] attempts to discourage the needless filing of groundless lawsuits."); Laremont-Lopez v. Se. Tidewater Opportunity Ctr., 968 F. Supp. 1075, 1078 (E.D. Va. 1997) ("The purpose of Rule 11 is to deter conduct that frustrates the just, speedy, and inexpensive determination of civil actions."); Anderson v. Godley, No. 3:07cv318, 2009 WL 2881080, at *11 (W.D.N.C. Sept. 8, 2009) ("One of the fundamental purposes of Rule 11 is to reduce frivolous claims and to deter costly meritless maneuvers, [thereby] avoid[ing] delay and unnecessary expense in litigation.") (cleaned up); cf. Smalls v. Chief of Police, No. 4:15cv17, 2015 WL 7162970, at *2 (W.D. Va. Nov. 13, 2015) ("Defendants have presented no evidence that any of the offending pleadings have resulted in any delay in discovery or any increase in the cost to the parties.").

9

The text of the Rule itself indicates that the "later advocating" provision on which the defendants base their argument refers to oral advocacy. The text of the Rule states:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies . . .

Fed. R. Civ. P. 11(b). The presumptions against surplusage entails that "later advocating" must mean something different than the act of "signing, filing, or submitting" a "pleading, written motion, or other paper." Because "other paper" is itself a catchall, that list of kinds of documents is most naturally read to be all-encompassing. Thus, "later advocating" must be something other than "signing, filing, or submitting" any kind of paper. If "later advocating" simply meant submitting some kind of offending written filing, that action would already be accounted for by the other parts of the quoted portion of Rule 11. It follows that "later advocating" means taking some other kind of action.

This conclusion is also supported by another part of the Rule's construction: the relative pronoun that stands as the direct object of "advocating." The rule applies to "later advocating it," i.e., "a pleading, written motion or other paper." To be sure, some filings--for example, a reply brief--may be thought of as advocating the contents of an earlier-filed "pleading, written motion or other paper." But, because a reply brief would itself

10

fall within the category of "other paper," "later advocating" of a paper must mean something other than the submission of a paper that advocates a claim.

The text of Rule 11(b) thus gives every indication that "later advocating" refers to something other than the submission of papers. And the most natural interpretation is that it refers to oral advocacy, *i.e.*, statements made in court that advocate the contents of an existing filing.

This interpretation is supported by the fact that oral advocacy is not, in itself, sanctionable under Rule 11. The later-advocacy provision is thus best and most naturally understood as carving out an exception to the exclusion of statements made at oral argument: a litigant who reaffirms at oral argument a position previously set forth in a written statement is "later advocating" that earlier paper within the meaning of Rule 11, and so can be sanctioned in a way not permitted under Rule 11 when the advocacy concerns an issue that has arisen for the first time during oral argument. This interpretation of Rule 11 is affirmed by Fourth Circuit precedent:

> Rule 11, however, severely limits a court's ability to sanction counsel for oral statements. It permits a court to impose sanctions only on the basis of a false, misleading, or otherwise improper "pleading, written motion, or other paper." Thus, as the Advisory Committee has explained, Rule 11 "applies only to assertions contained in papers filed with or submitted to the court." rule "does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have

been made if there had been more time for study and reflection." In sum, an oral statement may form a basis for Rule 11 sanctions only if it advocates a contention previously contained within a written submission.

In re Bees, 562 F.3d 284, 289 (4th Cir. 2009) (internal citations omitted); see also O'Brien v. Alexander, 101 F.3d 1479, 1490 (2d Cir. 1996) ("Hence, when O'Brien's counsel made the oral statement he was presenting a signed paper by 'later advocating' it within the meaning of Rule 11(b)."); Phonometrics, Inc. v. Econ. Inns of Am., 349 F.3d 1356, 1361 (Fed. Cir. 2003) ("[O]ral statements that 'later advocat[e]' untenable contentions made in previously-filed papers are sanctionable under Rule 11."); Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F.3d 223, 226-27 (7th Cir. 1995) ("Rule 11 is not all of a piece.  Much of its language is directed to the signing of documents . . . but at least one sentence concerns 'later advocating' an earlier filed document.").

In addition to the textual support for this understanding of Rule 11, interpreting the "later advocating" provision to refer to oral argument also makes good sense.  Attorneys at oral argument must sometimes confront novel issues and answer questions without the opportunity to consult legal authorities and other materials. Rule 11 thus does not hold attorneys to the same standard for claims made at oral argument as claims made in written submissions to the Court.  Rule 11 thus only applies to oral advocacy if an attorney at oral argument should have known better--*i.e.*, if the

claim had already been presented in an earlier writing and shown to be unsound and the attorney later advocates that same position.

With this understanding of the scope of applicability of Rule 11, the Court can now turn to the question of whether the dismissal notice and the defendant's lack of action with regard to the Williams filing constitute sanctionable conduct under Rule 11.

## ANALYSIS

### a. Predicate Requirement for Sanctions

Rule 11 requires not only that an argument or factual claim be unfounded but also that it be submitted to the Court on an inadequate basis, with the submitting attorney's not having satisfied obligations to perform due diligence. See Fed. R. Civ. P. 11(b). The defendants provide extensive argument that the allegations as to the non-tribal defendants were unfounded *ab initio*. Were the Court to find that either the dismissal notice or the Williams filing fall within the scope of potentially sanctionable conduct, it would then be necessary to determine whether the plaintiffs' attorneys had a reasonable basis for making the claims in question. But because, as discussed below, neither filing is even in-principle sanctionable under Rule 11's "later advocating" provision, the Court need not reach the question regarding the evidentiary basis on which the plaintiffs made their filing. Accordingly, the Court sets aside whether the plaintiffs' attorneys had an adequate basis on which to make their allegations.

13

**b.    The Dismissal Notice**

The defendants argue that the dismissal notice constitutes an attempt by plaintiffs' counsel "to achieve the idiomatic proverb of having their cake and eating it too."  ECF No. 90 at 3.  The plaintiffs' attorneys do this, according to the defendants, by admi[tting] that they lacked evidence to support the [COMPLAINT]" while simultaneously "continu[ing] to actively advocate in the Dismissal Filing for their unsupportable . . . factual positions . . . ."  Id.

The defendants' argument depends on a specific construal of what the term "later advocating" means.  However, the defendants do not provide a clear argument as to the meaning of the term. Instead, they cite to a variety of sources that state what is already clear from the plain text of Rule 11, *viz*. that "later advocating" (whatever that might be) unfounded claims is not permitted.

The plaintiffs' attorneys do not deny the proposition that later advocating such claims is prohibited; they deny that the filing in question constitutes later advocating.   And  the defendants' attorneys' arguments do not succeed in establishing that the plaintiffs' attorneys have engaged in impermissible "later advocating" of unfounded claims because they do not properly attempt to do so, instead in each brief moving directly to the conclusory claim that the plaintiffs' filings, because they are

14

[assumed to be] an instance of "later advocating," warrant sanctions.

For example, the defendants' supplemental brief argues that the plaintiffs' attorneys' actions in the dismissal filing fall under the "later advocating" provision because the filing "admit[s] that they lacked the evidentiary support" for the COMPLAINT, yet in that same filing "continued to advocate . . . the same falsities that had been asserted in the [COMPLAINT]." ECF No. 87 at 1. That brief was submitted in response to the Court's directive (ECF No. 86) that the parties supplement their earlier filings with an analysis of the question of how the "later advocating" provision of Rule 11 should be understood. As a response to that directive, the argument quoted above is clearly question-begging because it does not offer any actual analysis of what "later advocacy" means. Instead, in explaining how the filing runs afoul of the prohibition of "later advocating," the brief makes the circular argument that the plaintiffs violated the "later advocating" provision because they "continued to advocate" the position in question.

The defendants' briefing eventually makes clear that they consider the dismissal filing to be the core of their sanctions claim because it "wrongfully telegraphed" to the Court and to the public that "despite the withdrawal of the [COMPLAINT], there was nevertheless purported evidence of RICO-type activity by Mr.

Burgess in Virginia . . . ."  ECF No. 26 at 2.  They further emphasize that "the Dismissal Filing was a transparent advocative effort by Plaintiffs' counsel to continue to assert . . . the false 'contention' of  Virginia RICO conspiracy (involving Mr. Burgess) as a jurisdictional boost in Williams."  Put otherwise, the charge is that, even though the dismissal filing withdrew certain allegations, it tried (and allegedly did) convey both that the plaintiffs' attorneys continue to believe the allegations of the COMPLAINT and that they hope to persuade the Court of the truth of those allegations as well.

Assessing the defendants' argument begins by looking to the Advisory Committee notes, which state that an attorney is not subject to sanctions unless if, after receiving a safe harbor letter, he or she "refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation."  Fed. R. Civ. P. 11, advisory committee notes to 1993 amendment.  And there is no escaping the conclusion that that is precisely what the plaintiffs' attorneys did in stating that they were "dismissing this case until more information is obtained."  The Rule does not give the defendants' attorneys grounds to seek more than this from opposing counsel.

That conclusion is further supported by the meaning of "later advocating," as analyzed above.  The dismissal notice does not constitute "later advocacy" as that term is used in the Rule; nor

16

does it even constitute advocacy in a general sense.  It is not coherent to charge a lawyer with <u>advocating</u> a position in a filing in which he concedes that he lacks the evidence to advance the claim in question and therefore voluntarily dismiss it.

The propositional content in the complained-of section of the dismissal filing amounts to: "We withdraw the claim because we lack evidence to prosecute it right now; though we continue to believe the claim to be substantially true." When the dismissal filing was submitted, the plaintiffs' attorneys were not "advocating" for the legal claims in the COMPLAINT because they were, in fact, in the act of dismissing those claims.  The dismissal filing did not prosecute the claims in question in any identifiable legal sense, nor did it ask the Court to <u>do</u> anything or decide anything with respect to the dismissed claims.  The governing purpose of Rule 11 thus lends no support to the Motion because the allegedly offending filing did not in any way multiply or prolong proceedings or otherwise contribute to inefficiency or waste.

Aside from the question of whether the dismissal filing counts as "later advocating" the assertions first made in the COMPLAINT, there is also the question of whether the dismissal filing could be treated as sanctionable on some other basis.  The most obvious answer is: no, because the filing did not ask the Court to do anything, and it is therefore not the sort of thing that can be

charged with advancing sanctionable claims. The defendants suggest that the filing aimed to provide the plaintiffs with a "jurisdictional boost" for their argument as to Burgess's amenability to jurisdiction in Williams. That is a conceivable interpretation of the plaintiffs' attorneys' motive in submitting the filing, and the defendants presumably wish for the Court to treat the filing as having been submitted for an "improper purpose" within the meaning of Rule 11. But Williams is a different case, and the rhetorical flourishes added to the dismissal filing are not in any way admissible as evidence in determining the jurisdictional question in Williams, even if so intended. A more cogent theory would thus be necessary to explain how a document which explicitly retracted a claim and acknowledges a lack of evidence for it can be sanctionable, when the standard for sanctions is that a document must frivolously or groundlessly ask the Court to do something or materially advance some improper purpose. Cf. Meisner v. Zymogenetics, Inc., No. 3:19cv1555, 2020 WL 276002, at *6 (D.S.C. Jan. 23, 2020), aff'd 853 F. App'x 860 (4th Cir. 2021) ("Plaintiff did take later action subject to Rule 11 by filing various documents. Most critically for present purposes, she opposed dismissal of this action and filed objections to the Report (which recommended dismissal).").

Whether the grudging "parting shot," as the defendants describe the filing, is exemplary behavior is a wholly separate

18

question from whether it is sanctionable under Rule 11.  And there is no basis in the text of Rule 11, the committee notes, or any of the very scant authorities cited by the defendants to justify the application of sanctions for the dismissal filing.  Their position runs contrary to the text and purpose of Rule 11 as well as all identifiably relevant case law.

### c.  The **Williams** Filing

The arguments regarding the Williams filing are dealt with quite straightforwardly.  The Court will not impose sanctions because the Court lacks authority to do so.  Rule 11 governs written submissions and later advocacy of those submissions in a particular case; it gives a Court no authority to sanction conduct in any other cases or any form of conduct not explicitly specified in the text of Rule 11.  See, e.g., In re Bees, 562 F.3d 284, 289 (4th Cir. 2009) ("as the Advisory Committee has explained, Rule 11 'applies only to assertions contained in papers filed with or submitted to the court.'"); Simontacchi v. Invensys, Inc., No. 3:05cv283, 2009 WL 426466, at *11 (W.D.N.C. Feb. 19, 2009) ("if any Rule 11 sanctions are to be imposed for Simontacchi's conduct . . . they must be based on Simontacchi's actions in this Court") (citing In re Allnutt, 55 F.3d 557 (4th Cir. 1998)); Anderson v. Wade, No. 3:05cv33, 2008 WL 873897, at *13 (W.D.N.C. Mar. 27, 2008), rev'd on other grounds, 322 F. App'x 270 (4th Cir. 2008) ("A full nineteen pages of the twenty-seven page brief are

19

dedicated to Anderson's other litigation exploits. While those allegations show that Anderson is a prolific pro se litigant, this Court is compelled to assess this Motion based on Anderson's filings made before this Court in this action."); Christian v. Mattel, Inc., 286 F.3d 1118, 1131 (9th Cir. 2002) ("Rule 11 sanctions are limited to "paper[s]" signed in violation of the rule. Conduct in depositions, discovery meetings of counsel, oral representations at hearings, and behavior in prior proceedings do not fall within the ambit of Rule 11.").

The argument as to why the plaintiffs' attorneys conduct in Williams should be sanctioned fails for a second reason: the Advisory Committee makes clear that Rule 11 does not, as a general matter, require the retraction of contentions that are later shown to be ungrounded. See Fed. R. Civ. P. 11, advisory committee notes to 1993 amendment ("[Rule 11(b)] does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses."); see also, e.g., Bakker v. Grutman, 942 F.2d 236, 240 (4th Cir. 1991) ("Rule 11 imposes upon substitute counsel a duty to investigate the legal and factual sufficiency of the claims he or she takes up . . . but until substitute counsel files some paper indicating an intention to continue prosecution of the suit, such a decision will not be presumed by looking to the complaint itself.") (emphasis added);

20

Phonometrics, Inc. v. Econ. Inns of Am., 349 F.3d 1356, 1362 (Fed. Cir. 2003) ("the district court did not impose sanctions for the mere failure to withdraw non-meritorious claims."); Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F.3d 223, 226-27 (7th Cir. 1995) ("we have also held that Rule 11 did not impose a continuing duty on signers to update or correct previously filed pleadings and papers.").

These points are jointly dispositive of the issue:  The plaintiffs' attorneys did not, as the defendants argue, have a duty to withdraw their filing; and even if they did, an act or failure to act with regard to a different case is not sanctionable in this case.

### CONCLUSION

For the reasons set forth above, DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(1-3) (ECF No. 15) will be denied.

It is so ORDERED.

_____ /s/  _REP_ _____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  June _9_ , 2022